No. 13,239.

## HEYL v. THE STATE.

CRIMINAL LAW.—*Trial by Special Jury.*—Under the statutes of this State the courts have power, when it becomes necessary, to call a special jury to try a criminal cause.

SAME.—*Instructions.*—*When Defects in Cured.*—An erroneous instruction, unless it be plainly withdrawn, can not be corrected by giving an accurate but inconsistent instruction on the same subject; where, however, an inaccuracy in one instruction consists in its being merely incomplete or obscure, it may be remedied by another instruction.

SAME.—*Reasonable Doubt.*—*Reversal of Judgment.*—In order to justify the reversal of a judgment for a merely inaccurate definition of what constitutes a reasonable doubt, it must very plainly appear that the defendant was thereby prejudiced in his substantial rights.

SAME.—*Prosecuting Attorney.*—*Argument.*—Reference by the prosecuting attorney, in his closing argument to the jury, to recent riots in a city of another State and the burning of the court-house by a mob, attributing

the cause to the lax administration of the criminal law in that city,. but not alluding to the defendant in that connection, is not a transgression of his privileges.

SAME.—*Misconduct in Argument.*—A statement by the prosecuting attorney, in argument to the jury, that he has personal knowledge of the fact that the defendant is reputed to be a hotel thief, and that he has been published and portrayed in the Police Gazette as such, is misconduct, but where it appears from the evidence that a conviction was in any event inevitable, and that the punishment assessed is not excessive, the judgment will not be reversed.

From the Marion Criminal Court.

*J. W. Gordon, L. O. Bailey, M. Carey* and *T. J. Cogan,* for appellant.

*L. T. Michener,* Attorney General, and *J. H. Gillett,* for the State.

MITCHELL, J.—The appellant was tried upon an information, and found guilty of the charge of grand larceny. He was sentenced to a fine and five years imprisonment in the State's prison.

No regular panel of jurors having been drawn or returned for the term at which the trial took place, the bailiff, by the direction of the court, called from the by-standers, twelve qualified persons as jurors. The appellant objected to being tried by a jury thus selected.

The first point insisted upon is that the court erred in requiring him to submit his cause to a special jury.

That justice must use right means in attaining its ends, and that its ends when attained must be such as the law allows and approves, can not be denied.

The question is, did the court proceed in the organization of the jury in a manner which the law does not sanction?

Section 1396, R. S. 1881, reads as follows: "In all cases when the proper officers have failed or refused to draw and empanel a traverse jury, or where, for any other cause whatever, no traverse jury shall be present at any term of the court, it shall be lawful, and is hereby made the duty of the

circuit court, if the business thereof require it, to order the sheriff to summon a jury from the by-standers or citizens of the county," etc.

Section 1790 provides that the trial jury used in civil cases shall act in criminal cases, and that the sheriff, in case a jury trial is demanded, shall call a jury in the manner prescribed by law, or as directed by the court.

Section 522 provides that "The court shall have the power, where the business thereof requires it, to order the empanelling of a special jury for the trial of any cause."

These sections of the statute leave no room to doubt the power of the court to empanel a special jury under the circumstances disclosed in the record.

The officers charged with the duty of drawing or selecting a jury may have neglected their duty. It may often happen that a panel regularly selected becomes disqualified. It can not be permitted that circumstances such as we have mentioned should deprive the court of the necessary machinery for the transaction of its business. Hence the statutes to which we have referred make provision for any such emergency.

No question is made but that the jurors empanelled possessed all the requisite statutory qualifications. Nor is there any claim that they did not, when empanelled, constitute "an impartial jury."

Having been selected and empanelled in a manner authorized by law, the constitutional rights of the appellant were not infringed. *Pierce* v. *State*, 67 Ind. 354; *Evarts* v. *State*, 48 Ind. 422; *Winsett* v. *State*, 57 Ind. 26.

The bill of exceptions states that no jury had been drawn for that term, so that even if it had been necessary, as is contended, that the record should affirmatively show the necessity for, or authority to call, a special jury, it does so appear. Without that, however, the regularity of the proceedings would have been presumed, in obedience to the maxim that "All acts are presumed to have been rightly and legally done."

In its seventh charge the court instructed the jury, in sub-stance, that if they had a reasonable doubt as to any material fact going to the defence, or necessary to make the cause, the defendant was entitled to the benefit of such doubt.

As to what constituted a reasonable doubt, the jury were told, in substance, that not every possible or frivolous doubt that might be conjured up, was a reasonable doubt; but that if the evidence in the case failed to satisfy their minds of the truth of every material proposition necessary to establish the criminal liability of the defendant, with such certainty that a prudent man would feel safe in voluntarily acting in his own important affairs, there would in such a case be a reasonable doubt, and that in that event they must acquit the defendant.

The fifteenth instruction asked by the defendant, and given by the court, is as follows: "A reasonable doubt exists, when-ever, as long as taking all the evidence in the case together, and fairly considering it, it does not so satisfy your minds of the truth of the proposition to be found, that a reasonable and prudent man would feel safe to act upon it in matters involving his own most important affairs and dearest inter-ests, voluntarily and under circumstances in which he was under no compulsion to act at all."

The argument of the appellant is, that the instruction given by the court of its own motion, upon the subject of what constitutes a reasonable doubt, was erroneous, and that although the court at his request subsequently instructed the jury correctly, on the same subject, since the first charge was not withdrawn, the error was not cured by giving an inconsistent although correct instruction.

The rule that an erroneous instruction, unless it be plainly withdrawn, can not be corrected by giving an accurate but inconsistent instruction on the same subject, is founded in reason, and is not to be infringed. Of course, if the law governing a material proposition involved in a case, is put

to the jury in one instruction one way, and in the same or another in such a way as to be inconsistent with and contradictory of the first, the result must be confusion in the minds of the jury. In such a case the jury would be required to elect between inconsistent theories of the law upon the same subject. Where, however, an inaccuracy in one instruction consists in its being merely incomplete or obscure, it may be remedied by being made complete, certain and accurate by another instruction. The instructions under consideration fall within the rule last above stated. They are not contradictory or inconsistent. One is more complete than the other. In each is undertaken the oft repeated attempt to define in the abstract, and ascertain the elements of, a reasonable doubt. In one the jury are, in effect, told that a juror may reasonably doubt the defendant's guilt, until such a state of mental certainty is reached, that a prudent man would feel safe in voluntarily acting in his own important affairs. The other instruction added, as a requirement to remove a reasonable doubt, that the jurors should come to that mental condition in which a prudent man would feel safe in acting in a matter involving his most important affairs and dearest interests. As was pertinently said in *Garfield* v. *State*, 74 Ind. 60: "The case of *Bradley* v. *State* (31 Ind. 492) recognizes both these expressions as proper statements of the law, and the difference between them is not such as to justify an interference with the verdict." Indeed, we might add, that in order to justify the reversal of a case for a merely inaccurate definition of what constitutes a "reasonable doubt," it must very plainly appear that the defendant was prejudiced in his substantial rights thereby. The phrase involves too much that is in the nature of metaphysical abstraction, to enable a court to say that an entirely accurate definition has as yet been fully attained. *Boyle* v. *State*, 105 Ind. 469, 476 (55 Am. R. 218), and cases cited; *Brown* v. *State*, 105 Ind. 385.

A number of points are suggested in the brief, which re-late to rulings of the court upon the admission and exclusion respectively of various matters of evidence. None of them are made in such a way as to require examination by the court, or as to indicate that counsel deemed them of any consequence. We have, however, examined the points made and find nothing in any of them which would authorize a reversal of the judgment. In view of the mere mention of the points—eleven in number—by counsel in their brief, without any statement of the evidence admitted or excluded, except to refer us to the pages and lines of a voluminous record where it is to be found, we have not felt justified in stating each point separately, and the reasons for the holding that no error was committed, in respect to rulings on the admission or exclusion of evidence.

During his closing argument to the jury the prosecuting attorney referred to the riots in Cincinnati, and the burning of the court-house by a mob, which had occurred recently before the trial. He assigned as a cause for the mob-violence, the lax administration of the criminal law in that city. The appellant objected to the reference thus made, and the conclusions drawn. The court overruled the objection. The remarks alluded to above had reference to an historical event, concerning which the jury were supposed to be familiar, both in respect to its occurrence and the causes to which it was attributed.

As there was no allusion made to the defendant in that connection, or to his being in any manner concerned in the riots, we can not say that the privilege of fair debate was transgressed.

In his closing argument counsel for defendant, by way of illustrating the value of certain testimony given on behalf of the State to sustain the general reputation of a witness, said, in substance, that the witnesses did not profess to have any knowledge of the reputation of the witness whose testimony they were called to sustain, and that from the same.

standpoint he could personally sustain the general reputation of the defendant.

This was made the basis upon which the prosecutor said in argument that he had personal knowledge of the fact that the defendant was reputed to be a hotel thief, and that he had been published and portrayed in the Police Gazette as such.

The speech of the prosecutor went entirely beyond the bounds of propriety in that respect. It can not be justified. There was a bare shadow of excuse for it in what was said by the defendant's counsel. The remarks should have been promptly withdrawn from the jury, and the court should have admonished both the jury and counsel, in no uncertain terms, in respect to their duty in that connection. This was not done. The evidence in the record, however, fully sustains the verdict of the jury, and there was a shadow of excuse for the remarks.

Under such circumstances we have concluded, after some hesitation, that a reversal ought not to follow. Upon the evidence in the record, it seems to us that a conviction was at all events inevitable, and as the punishment assessed does not seem to have been out of proportion to the offence, we can not see that there could have been any prejudice to the substantial rights of the appellant. In such a case we are not authorized to reverse. *Epps* v. *State*, 102 Ind. 539; *Brown* v. *State, supra.*

Judgment affirmed, with costs.

Filed Feb. 25, 1887.